IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION


TIMOTHY C. WATSON,

      Petitioner,

                                                No. 12-1131

v.

TAMMY FORD,

      Respondent.

_____

ORDER DIRECTING RESPONDENT TO FILE A SUPPLEMENTAL ANSWER
_____


On May 23, 2012, Petitioner, Timothy C. Watson ("Petitioner"), an inmate at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("the Petition"). (Pet. for Writ of Habeas Corpus, *Watson v. Ford*, No. 12-1131 (W.D. Tenn. May 23, 2012) (Docket Entry ("D.E.") 2)). On August 30, 2012, Petitioner filed an amended Petition. (D.E. 9.) On August 31, 2012, the Court ordered the WCF warden, currently Tammy Ford ("Respondent"), to file a reply. (D.E. 6.) On November 2, 2012, Respondent filed both an answer to the Petition and the state court record. (D.E. 19, 20.) On November 21, 2011, Watson filed a response. (D.E. 19.)

In her response, Respondent did not address the merits of the Petition, but instead argued that the issues raised by Petitioner are wholly barred for procedural default/failure to exhaust state court remedies because the post-conviction petition was filed over a year after the entry of the initial judgment. (*Id.*) In support of this position, Ford cites the November 18, 2011 Tennessee Court of Criminal Appeals ("TCCA") opinion holding that the post-conviction

petition was filed untimely and, thus, properly denied by the post-conviction court on that ground. *See Watson v. State*, No. W2010-02674-CCA-R3-PC, 2011 WL 5841690, at *1 (Tenn. Crim. App. Nov. 18, 2011). Respondent does not contest, however, that the instant Petition is timely under the principle of equitable tolling.

Watson's case presents many unique situations that create significant procedural complexity. A review of facts as they appear in the record before this Court follows: A Dyer County grand jury indicted Watson in October of 2005 for two counts of selling more than .5 grams of cocaine. (Indictment, *State v. Watson*, No. C05-437 (Cir. Ct. Dyer Cty. Oct. 10, 2005) (D.E. 20-1 at 5-6)).[1] Petitioner was initially represented by Assistant Public Defender Timothy Boxx. (Mot. to Dismiss, *id.* (Aug. 21, 2007) (*Id.* at 7)). Upon Watson's request, Boxx was allowed to withdraw from representation because it was anticipated that the Public Defender's Office might be called as a witness against Petitioner in another case. (Order Substituting Counsel, *id.* (Jul. 29, 2008) (D.E. 20-10 at 36)). Thus, attorney Martin Howie became the attorney of record. Howie represented Watson until shortly before trial, when the client lost confidence in Howie's representation. (*See* Letter from Pet'r to Trial Ct., *id.* (Jan. 22, 2009) (D.E. 21-1 at 82)). Petitioner requested leave from the court to proceed *pro se*, however, the reasons for this change are somewhat disputed. In one version, Watson, in multiple communications with the trial court, stated that, although he had not wished to represent himself, he felt that he had no other alternative due to an alleged lack of diligence and communication with Howie and counsel's alleged drug use. (*See id.*; Pet. for Writ of Habeas Corpus, *Watson v.*

---

[1] It is not completely clear from the record what happened to the first count. At some point, the two counts were severed. In any event, only Count Two appears in the record before this Court.

2

*Ford*, No. 12-1131 (W.D. Tenn. May 23, 2012) (D.E. 1); Pet. for Post-Conviction Relief, *State v. Watson*, C05-437 (Cir. Ct. Dyer Cty Jun. 15, 2010) (D.E. 20-1 at 61-102)).  In another version, the trial court stated that Watson could not get along with any of his attorneys and "insisted upon representing himself," despite receiving warnings from the trial court about the perils of self-representation.  (*See, e.g.*, Order on Pet. & Am. Pet. for Post-Conviction Relief, *State v. Watson*, No. C05-437 (Cir. Ct. Dyer Cty. Oct. 29, 2010) (D.E. 20-1 at 105)).

Regardless of the reason, the trial court granted Petitioner's request to proceed *pro se* and reappointed Howie as elbow counsel to assist during trial.[2]  (*See id.* at 106.)  At trial, Petitioner attempted to present three alibi witnesses to testify that he was in Indiana at the time of the offenses, however, that effort was disallowed due to Watson's failure to comply with Tennessee Rule of Criminal Procedure 12, which governs disclosure of alibi witnesses.  (Tr. of Jury Trial, *Id.* (Jan. 15, 2009) (D.E. 20-5 at 118-120)).  Thus, the defense presented no proof at trial, and Howie delivered the closing argument.  (*Id.* at 132.)  The jury found Watson guilty of Count Two on January 15, 2009.  (*Id.* at 174.)

On January 22, 2009, Petitioner sent a letter to the trial court asking for a new attorney, alleging six instances of deficient representation and assistance on Howie's part.  (*Id.* at 13.)  On February 5, 2009, the trial court denied the request and instructed Howie to proceed with "the sentencing hearing, any motion for new trial, and any appeal, if necessary."  (*Id.* at 58.)  On February 9, 2009, Watson wrote another letter to the trial court stating that he had no choice but

---

[2] These facts have been gleaned from the filings and other accounts found in the record. At the March 9, 2010 hearing conducted on the Motion for a New Trial, it was clarified that "[t]here is no order in the file appointing Mr. Howie as elbow counsel.  There is no order in the file relieving Mr. Howie as counsel.  And there is no transcript available to Mr. Watson of those proceedings."  (Tr. of Hr'g on Mot. for a New Trial, *id.* (Mar. 9, 2010) (D.E. 20-6 at 31)).

to respect the ruling, however, he refuted the trial court's statement that he had "insisted on representing himself. (*Id.* at 288, 291.) Instead, Petitioner stated, "if you [the trial court] recall I said: 'I don't want to represent myself I feel that I have to represent myself.'" (*Id.* at 291.)

Retained attorney Bede Anyanwu represented Watson at the sentencing hearing on April 21, 2009, calling the mother of Watson's son as a witness and requesting that, due to his client's mental and emotional difficulties, he be sent to a mental health facility instead of to prison. (*See* Tr. of Sentencing Hr'g, *id.* (D.E. 20-7 at 3-36)). Petitioner was sentenced to fifteen years as a Range II, multiple offender. (*Id.* at 35.)

On April 24, 2009, Watson wrote another letter to the trial court stating that Anyanwu had "run off with his money" and would neither "represent [him] in a motion for new trial" nor "return [his] case file." (*Id.* at 13.) Petitioner asked the court to appoint new counsel and "possibly . . . an extension to allow [new] counsel time to prepare." (*Id.*) Although the technical record contains this letter, there is nothing to indicate that the trial court ever acted on the request.

On the same day, a judgment was entered in the criminal case. (*Id.* at 14.) The judgment contained the incorrect date of the jury's determination—January 14, 2009 instead of January 15, 2009—and erroneously indicated that Watson had pleaded guilty to the offense charged. (*Id.*) On May 19, 2009, a "corrected" judgment was filed with a new entry date of May 19, 2009, still referencing the Petitioner's plea to the offense charged. (*Id.* at 15.)

On July 16, 2009, Watson filed a *pro se* "Amended Motion for New Trial" on the following grounds: 1) the trial court erred in allowing Petitioner to waive his right to counsel without sufficient inquiry into his competency either through in-court questions or a formal evaluation, despite having been notified of defendant's mental health problems; 2) the trial court

erred in not ensuring that Petitioner understood the charges against him, any lesser included offenses—including simple possession and casual exchange—or any possible defenses; 3) the trial court erred because the evidence was insufficient to support the conviction—namely the uncorroborated evidence of a confidential informant; 4) the commission of police and prosecutorial misconduct for, among other things, failing to reveal exculpatory evidence and proceeding with the prosecution for personal motives; and 5) the trial court erred when it included in the jury instructions the phrase, "when you find the Defendant guilty." (*Id.* at 16-31.)

On January 8, 2010, Petitioner, now represented by Attorney Jason R. Creasy, filed a "Motion for Entry of Additional Corrected Judgment" to reflect that he was found guilty by a jury. (*Id.* at 48-49.) On February 2, 2010, Watson moved to "Allow Amendments to Petitioner's Motion for New Trial." (*Id.* at 51.) Attached to this pleading was a document styled as a "Third Amendment" to the Motion for New Trial. (*Id.* at 53-55.) In it, Petitioner argued: 1) the timeliness of the motion, as the court was put on notice by his April 24, 2009 letter indicating an intent to request a new trial, which should be accepted as a motion for a new trial; 2) the failure to provide Petitioner with exculpatory evidence; and 3) the failure of the trial court to rule on pretrial motions, or, in the alternative, find good cause for deferring the ruling until after the trial or a verdict. (*Id.*)

The trial court entered another "corrected" judgment on March 9, 2010, to reflect that Petitioner was found guilty by a jury. (*Id.* at 56.) Three days later, the trial court entered yet another corrected judgment to reflect that Watson's trial was conducted on January 15, 2009, rather than January 14, 2009. (*Id.* at 57.) This judgment, of March 12, 2009, appears to contain the correct information.

On March 12, 2010, the trial court issued an order determining that the document filed on April 24, 2009, the letter to the trial court in which Petitioner requested new counsel and an extension of time for filing a motion for new trial, did not constitute a motion for new trial. (*Id.* at 58-60.) Instead, the trial court determined that the July 15, 2009 document entitled "Amended Motion for New Trial" was the first such motion filed by Petitioner and was untimely, as it had been received more than thirty days after the entry of the April 24, 2009 judgment.[3] (*Id.* at 58.) Despite finding the motion for new trial and the following amendments to be untimely, the trial court nevertheless ruled on the merits, ultimately concluding that Petitioner was not entitled to relief, in part, because he was adequately admonished about the dangers of proceeding *pro se*.[4] (*Id.* at 59.)

---

[3] The granting of a new trial is governed by Rule 33 of the Tennessee Rules of Criminal Procedure, which states in pertinent part:

> (b) Time for Motion; Amendments. A motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered. The court shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for a new trial.

Tenn. R. Crim. P. 33.

[4] The transcript of this hearing where the Petitioner was warned by the trial court was misplaced and never included in the record. The court, in the Order on the post-conviction petition, stated, "The [c]ourt on more than one occasion advised the defendant of the perils of self representation and suggested that he allow an attorney to represent him. The defendant insisted upon representing himself. However, transcripts of these hearings where the [c]ourt warned the defendant of the problems that he might face have not been located." (Order on Pet. & Am. Pet. for Post-Conviction Relief, *State v. Watson*, C05-437 (Dyer Cty. Cir. Ct. Oct. 29, 2010) (D.E. 20-1 at 106)). Subsequently, both Lance Webb, Assistant District Attorney, and Creasy filed a joint notice stating that they had diligently searched for the transcript, but were unsuccessful. *See* Joint Notice, *id.* (20-10 at 44).

On June 15, 2010, Petitioner filed a *pro se* petition for post-conviction relief. (*Id.* at 61-102.) In his pleading, Watson alleged two grounds for relief: (1) the conviction was based on the unconstitutional failure of the prosecution to disclose favorable evidence to defendant; and (2) ineffective assistance of counsel. To support the second basis, Watson attached his formal complaints to the Tennessee Board of Professional Responsibility alleging misconduct by Boxx at arraignment and plea, Howie at trial, and Anyanwu at sentencing. (*Id.* at 70-99.)

The trial court allowed Watson to pursue a delayed direct appeal on the issue of whether the Motion for a New Trial was timely. In the event it was found timely by the TCCA, the trial court indicated that the remaining issues could be taken up the TCCA. (*See* Tr. of Hr'g on Mot. for a New Trial, *id.* (Mar. 9, 2010) (D.E. 20-6 at 53)); *see also Watson*, 2011 WL 5841690, at *2-10. On June 29, 2010, Watson pleaded guilty to five charges from a separate indictment in the same trial court. *Watson*, 2011 WL 5841690, at *2. As part of that plea agreement, he waived his right to appeal this case and dismissed the pending appeal. At this hearing, the following interaction occurred,

> TRIAL COURT: Do you understand there's an issue about your representing yourself, because we can't find the transcript of the hearing that I had with you when I explained to you why you should not do that? You do recall that hearing, don't you?
>
> PETITIONER: Yes, sir.
>
> TRIAL COURT: Okay. Knowing that, is this all still agreeable with you?
>
> PETITIONER: Yes, sir, it is.

(D.E. 20-8 at 20-21.) It is clear from the record, however, that neither defense counsel nor Petitioner understood the implications of the lost transcript at the time of the plea. (Aug. 30,

2010 Hr'g (D.E. 20-9 at 6-8)).[5]  At a subsequent hearing related to the post-conviction petition,

Watson testified that he would have never waived his right to a direct appeal had he known the

consequences of the lost transcript.[6]  *Id.* at 36.  On October 5, 2010, the post-conviction court,

_____

[5] The trial court stated in various orders that it had discouraged Petitioner from engaging in *pro se* representation and adequately warned him of the problems that could arise.  (Order Denying Mot. for New Counsel, *State v. Watson*, No. C05-437 (Cir. Ct. Dyer Cty. Feb 5, 2009); Order Denying Mot. For New Trial, *id.* (D.E. 20-1 at 58); Order on Pet. & Am. Pet. for Post-Conviction Relief, *id.* (Oct. 29, 2010) (D.E. 20-1 at 105)).  However, Petitioner claims to have not understood the danger inherent in self-representation and to have been incompetent to act as his own counsel.  (Pet. for Post-Conviction Relief, *id.* (D.E. 20-1 at 60-102)).  Furthermore, no indication of an evaluation for competence, either to stand trial or to proceed pro se, is present in the record.  Given the gravity of this issue, the issue of the misplaced transcript could have entitled Petitioner to a new trial.  *See Faretta v. California*, 422 U.S. 806 (1975); *Moore v. Haviland*, 531 F.3d 393 (6th Cir. 2008) (holding that a trial court's failure to conduct a colloquy to ensure that waiver of right to counsel was knowing, voluntary and intelligent was an unreasonable application of federal law, warranting habeas relief); *see also State v. Small*, 988 S.W.2d 671, 673 (Tenn. 1999) (citing *State v. Coleman*, 519 S.W.2d 581 (Tenn.1975)) (stating that "in cases where an intelligent, knowing waiver was not adequately shown in the record, the defendants' convictions have been reversed.")

Nevertheless, the trial court, in its order denying post-conviction relief, held that Petitioner, because he dismissed his delayed appeal, waived his right to obtain a new trial based on his wavier of the right to counsel.

[6] During an August 30, 2010 appearance before the trial court, the attorney appointed to represent Watson at the post-conviction stage, Charles Kelley, elicited the following testimony:

KELLEY: And when you waived your appeal on the 29th, I believe, of June, did myself or Mr. Creasy advise you as to the consequences of the court reporter losing the transcript of the pro se hearing where you had represented yourself?

PETITIONER: No, sir.

KELLEY: Okay.  And had you known of the consequences of that, as you know now from the *Small* case, would you have waived your appeal?

PETITIONER: No, sir.

KELLEY: And you know that I, although I didn't know what the law was in the *Small* case, until I started researching the post-conviction issue, but I was appointed before you pled?

the same court that had originally tried Watson, held a hearing on the petition for post-conviction relief. (*Id.* (D.E. 20-11)).

In its order denying post-conviction relief, the post-conviction court determined that Watson had knowingly waived his right to an attorney and, therefore, had no claim for ineffective assistance of counsel. (Order on Pet. & Am. Pet. for Post-Conviction Relief, *State v. Watson*, No. C05-437 (Cir. Ct. Dyer Cty. Oct. 29, 2010) (D.E. 20-1 at 110)). Additionally, the court found that Watson's retained counsel had failed to move for a new trial following his sentencing; that the July 15, 2009 motion for a new trial was not timely filed; and that no motion for a new trial was properly before the court. (*Id.*)

The TCCA, considering Petitioner's appeal of the post-conviction court's denial of relief, held that the post-conviction petition had been filed untimely and, thus, did not warrant consideration on the merits. *Watson*, 2011 WL 5841690, at *1. This decision included Watson's claim that he received ineffective assistance of counsel during the post-trial phases.[7]

---

PETITIONER: Yes, sir.

KELLEY: So, therefore, you know that I'm charged to know the law?

PETITIONER: Yes, sir.

(Tr. of Hr'g Related to Post-Conviction, *id.* (D.E. 20-9 at 3-36)); *see also Small*, 988 S.W.2d at 673.

[7] Watson also petitioned the TCCA for habeas corpus relief, however the petition was denied on the grounds that state habeas relief is only available "when it appears on the face of the judgment or the record that the trial court was without jurisdiction to convict or sentence the petitioner or that the sentence has expired." *Watson v. State*, No. M2011-01726-CCA-R3HC, 2012 WL 1417313, at *1 (Tenn. Crim. App. Apr. 20, 2012), *perm app. denied*, 2012 Tenn. Lexis 475 (Tenn. July 12, 2012).

On brief before this Court, however, Respondent conceded that it would be inequitable to treat Petitioner's judgments as final until the date that he dismissed his direct appeal: July 22, 2010. Watson filed his post-conviction petition on June 15, 2010. Thus, his post-conviction petition should have been treated as timely, and his claims should have been addressed on the merits by the TCCA on post-conviction appeal. Accordingly, Petitioner has most likely exhausted his state-court remedies because he has given the state courts a "full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004) (holding that Petitioner is only required to raise his claims before the state's highest court; exhaustion does not require the state court to actually adjudicate the merits of the claims); Tenn. S. Ct. Rule 39 (stating that in federal habeas cases, state remedies are deemed exhausted without filing an application for permission to appeal to the Tennessee Supreme Court).

Given the complexities, the many apparent missteps, and the Respondent's concession in Petitioner's case, this Court finds that further consideration of the relevant law as to each facet of this litigation is required. Thus, Respondent is ORDERED to file a supplemental answer to the Petition that addresses on the merits each ground for relief raised by Petitioner within forty-five days from the entry of this Order. Respondent is further ORDERED to file any portions of the state-court record that have yet to be filed.

IT IS SO ORDERED this 30th day of September 2015.

/s J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE