**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

**TIMOTHY C. WATSON,**

**Petitioner,**

**v.**

No. 12-1131

**TAMMY FORD,**

**Respondent.**

_____

## ORDER DENYING PETITION PURSUANT TO § 2254, DENYING PENDING MOTIONS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

_____

Before the Court is the May 23, 2012 *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("the Petition") filed by Petitioner, Timothy C. Watson ("Petitioner" or "Watson"), inmate number 221443, who is housed at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee, against Respondent, Tammy Ford, Warden of WCF. (Docket Entry ("D.E.") 2.) In addition, the Court will consider other motions pending in this action.

## I. BACKGROUND

### A. *State Court Procedural History*

A Dyer County grand jury indicted Watson in October of 2005 for two counts of selling .5 grams or more of cocaine. (D.E. 20-1 at PageID 209-210.)[1] Petitioner was initially

_____

[1] It is unclear from the record what happened to the first count. At some point, the two

represented by Assistant Public Defender Timothy Boxx. (*Id.* at PageID 211.) Upon Watson's request, Boxx was allowed to withdraw from representation because it was anticipated that the Public Defender's Office might be called as a witness against Petitioner in another case. (D.E. 20-10 at PageID 886.) Attorney Martin Howie became the attorney of record. (D.E. 20-1 at PageID 288.) Howie represented Watson until shortly before trial, when the client lost confidence in his representation. (D.E. 20-1 at PageID 285.) Petitioner requested leave from the court to proceed *pro se*, however, the reasons for this change are somewhat disputed. In one version, Watson, in multiple communications with the trial court, stated that, although he had not wished to represent himself, he felt that he had no other alternative due to an alleged lack of diligence and communication with Howie and counsel's purported drug use. (D.E. 2 at PageID 11-12; D.E. 20-1 at PageID 285-87.) However, in an order denying Watson's petition for post-conviction relief, the post-conviction court found that Petitioner could not get along with any of his attorneys and "insisted upon representing himself," despite receiving warnings from the trial court about the perils of self-representation. (*See, e.g.*, D.E. 20-1 at PageID 314.)

Regardless of the reason, the trial court granted Petitioner's request to proceed *pro se* and reappointed Howie as elbow counsel to assist during trial.[2] (*See id.* at PageID 288.) At trial, Petitioner attempted to present three alibi witnesses to testify that he was in Indiana at the time of the offenses, however, that effort was disallowed due to Watson's failure to comply with

---

counts were severed. In any event, only Count Two appears in the record before this Court.

[2] These facts have been gleaned from the filings and other accounts found in the record. The transcript of evidence from Watson's trial indicated that he was proceeding *pro se* and that Howie was operating as elbow counsel. (D.E. 20-5 at PageID 535.) Also, at the hearing on the motion for new trial, the court stated that it recalled conducting a hearing regarding Petitioner's decision to represent himself at trial, although the court acknowledged that the transcript of that hearing was missing. (D.E. 20-6 at PageID 760-61.)

Tennessee Rule of Criminal Procedure 12, which governs disclosure of alibi witnesses. (*See* D.E. 20-5 at PageID 651-52.) Thus, the defense offered no proof at trial. (*Id.* at PageID 652-53.) The jury found Watson guilty of Count Two on January 15, 2009. (*Id.* at PageID 707.)

On January 22, 2009, Petitioner sent a letter to the trial court asking for a new attorney and alleging six instances of ineffective assistance of counsel against Howie. (D.E. 20-10 at PageID 884-85.) On February 5, 2009, the trial court denied the request and instructed Howie to proceed with "the sentencing hearing, any motion for new trial, and any appeal, if necessary." (D.E. 20-1 at PageID 288-89.) On February 9, 2009, Watson wrote another letter to the trial court stating that he had no choice but to respect the ruling, however, he refuted the trial court's statement that he had "insisted on representing himself." (*Id.* at PageID 291.) Instead, Petitioner stated, "if you'll [the trial court] recall I said: 'I don't want to represent myself I feel that I have to represent myself.'" (*Id.*)

Retained attorney Bede Anyanwu represented Watson at the sentencing hearing on April 21, 2009. The attorney called the mother of Watson's son as a witness and requested that, due to his client's mental and emotional difficulties, he be sent to a mental health facility instead of prison. (D.E. 20-7 at PageID 771, 784-800.) Petitioner was sentenced to fifteen years as a Range II, multiple offender. (*Id.* at PageID 804.)

On April 24, 2009, Watson wrote another letter to the trial court stating that Anyanwu had "run off with [his] money" and would neither "represent [him] in a motion for new trial" nor "return [his] case file." (D.E. 20-1 at PageID 217.) Petitioner asked the court to appoint new counsel and requested "possibly . . . an extension to allow [new] counsel time to prepare." (*Id.*) Although the technical record contains this letter, there is nothing to indicate that the trial court

ever acted on the request.

On the same day, a judgment was entered in the criminal case. (*Id.* at PageID 218.) The judgment contained the incorrect date of the jury's determination—January 14, 2009 instead of January 15, 2009—and erroneously indicated that Watson had pleaded guilty to the offense charged. (*Id.*) Approximately one month later, a "corrected" judgment was filed with a new entry date of May 19, 2009, still referencing Petitioner's plea to the offense charged. (*Id.* at PageID 219.)

On July 16, 2009, Watson filed a *pro se* "Amended Motion for New Trial" on the following grounds: 1) the trial court erred in allowing Petitioner to waive his right to counsel without sufficient inquiry into his competency either through an in-court colloquy or a formal evaluation, despite having been notified of defendant's mental health problems; 2) the trial court erred in not ensuring that Petitioner understood the charges against him, any lesser included offenses—including simple possession and casual exchange—or any possible defenses; 3) the trial court erred because the evidence was insufficient to support the conviction—namely the uncorroborated evidence of a confidential informant; 4) the commission of police and prosecutorial misconduct for, among other things, failing to reveal exculpatory evidence and proceeding with the prosecution for personal motives; and 5) the trial court erred when it included in the jury instructions the phrase, "when you find the Defendant guilty." (D.E. 20-1 at PageID 220-35.)

On January 8, 2010, Petitioner, now represented by Attorney Jason R. Creasy, filed a "Motion for Entry of Additional Corrected Judgment" to reflect that he was found guilty by a jury. (*Id.* at PageID 252-53.) On February 2, 2010, Watson moved to "Allow Amendments to

4

Petitioner's Motion for New Trial." (*Id.* at PageID 255.) Attached to this pleading was a document styled as a "Third Amendment" to the Motion for New Trial. (*Id.* at PageID 257-59.) In it, Petitioner argued: 1) the timeliness of the motion, as the court was put on notice by his April 24, 2009 letter indicating an intent to request a new trial, which should have been accepted as a motion for a new trial; 2) the prosecution's failure to provide Petitioner with exculpatory evidence; and 3) the failure of the trial court to rule on pretrial motions, or, in the alternative, find good cause for deferring the ruling until after the trial or a verdict. (*Id.*)

The trial court entered another "corrected" judgment on March 9, 2010, to reflect that Petitioner was found guilty by a jury. (D.E. 20-1 at PageID 260.) Three days later, the trial court entered yet another corrected judgment to reflect that Watson's trial was conducted on January 15, 2009, rather than January 14, 2009. (*Id.* at PageID 261.) The March 12, 2009 judgment contained the correct information.

On March 12, 2010, following a hearing, the trial court issued an order denying Watson's motion for new trial, determining that the document filed on April 24, 2009, the letter to the trial court in which Petitioner requested new counsel and an extension of time for filing a motion for new trial, did not constitute a motion for new trial. (*Id.* at PageID 262.) Instead, the trial court determined that the July 15, 2009 document entitled "Amended Motion for New Trial" was the first such motion filed by Petitioner and was untimely, as it had been received more than thirty days after the entry of the April 24, 2009 judgment.[3] (*Id.*) Despite finding the motion for new

---

[3] Motions for new trial are governed by Rule 33 of the Tennessee Rules of Criminal Procedure, which states in pertinent part:

(b) Time for Motion; Amendments. A motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the

trial and the subsequent amendments to be untimely, the trial court nevertheless ruled on the merits, ultimately concluding that Petitioner was not entitled to relief, in part because he was adequately admonished about the dangers of proceeding *pro se*.[4] (*Id.* at PageID 263.) The trial court stated that Watson could challenge its conclusion that the motion for new trial was untimely with the Tennessee Court of Criminal Appeals ("TCCA") and that, if the TCCA determined the motion was timely, the remaining issues could be addressed by the TCCA. (D.E. 20-6 at PageID 767).

On June 15, 2010, Petitioner filed a *pro se* petition for post-conviction relief. (D.E. 20-1 at PageID 265-306.) In his petition, Watson alleged two grounds for relief: (1) the conviction was based on the unconstitutional failure of the prosecution to disclose favorable evidence to defendant; and (2) ineffective assistance of counsel. To support the second basis, Watson attached his formal complaints to the Tennessee Board of Professional Responsibility ("BPR") alleging misconduct by Boxx at arraignment and plea, Howie at trial, and Anyanwu at sentencing. (*Id.* at PageID 274-303.) Attorney Charles Kelly, Sr., was appointed to represent

---

date the order of sentence is entered. The court shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for a new trial.

[4] The transcript of the hearing where Petitioner was warned by the trial court was misplaced and never included in the record. The court, in its order denying the post-conviction petition, stated that it had "on more than one occasion advised the defendant of the perils of self-representation and suggested that he allow an attorney to represent him. The defendant insisted upon representing himself. However, transcripts of these hearings where the [c]ourt warned the defendant of the problems that he might face have not been located." (Order of Pet. & Am. Pet. for Post-Conviction Relief, D.E. 20-1 at PageID 310.) Subsequently, both Lance Webb and Creasy filed a joint notice stating that they had diligently searched for the transcript but were unsuccessful. (D.E. 20-10 at 894.) Nevertheless, in a later hearing Petitioner stated that he remembered the hearing where he was advised about representing himself. (D.E. 20-8 at PageID 829-30.)

Watson, and an amended petition was filed, alleging the following grounds for relief: (1) that Boxx was ineffective for failing to locate documents that would have supported Watson's alibi defense; and (2) that both Howie and Anyanwu were ineffective for failing to file a timely motion for new trial. (D.E. 20-10 at PageID 855.) With respect to this second ground, Watson further alleged that, had the motion been timely filed, he would have been awarded a new trial because the transcript of the hearing wherein the court questioned him on his competency to proceed *pro se* was missing. (*Id.* at PageID 855-56.)

On June 29, 2010, Petitioner pleaded guilty to five charges from a separate indictment in the same trial court. (D.E. 20-8); s*ee also Watson v. State*, No. W2010-02674-CCA-R3-PC, 2011 WL 5841690, at *2 (Tenn. Crim. App. Nov. 18, 2011). As part of that plea agreement, he agreed to dismiss his direct appeal in the instant case, which was pending at the time. (D.E. 20-8 at PageID 829-30.) At this hearing, the trial court questioned Watson regarding his decision to dismiss the direct appeal, and the following interaction occurred,

> [TRIAL] COURT: Do you understand there's an issue about your representing yourself, because we can't find the transcript of the hearing that I had with you when I explained to you why you should not do that? You do recall that hearing, don't you?
>
> [PETITIONER]: Yes, sir.
>
> [TRIAL] COURT: Okay. Knowing that, is this all still agreeable with you?
>
> [PETITIONER]: Yes, sir, it is.

(*Id.*)[5]

---

[5] The trial court stated in various orders that it had discouraged Petitioner from engaging in *pro se* representation and adequately warned him of the problems that could arise. (Order Denying Mot. for New Counsel, *State v. Watson*, No. C05-437 (Cir. Ct. Dyer Cty. Feb. 5, 2009) (D.E. 20-1 at PageID 288-89); Order Denying Mot. For New Trial, *id.* ( Mar. 12, 2010) (D.E. 20-

At a subsequent hearing related to the post-conviction petition, Watson testified that he would have never waived his right to a direct appeal had he known the consequences of the lost transcript. (D.E. 20-9 at PageID 846.)  On October 5, 2010, the post-conviction court held a second hearing on the petition for post-conviction relief.  (D.E. 20-11.)  In its order denying post-conviction relief, the court determined that Watson had knowingly waived his right to an attorney and, therefore, had no claim for ineffective assistance of counsel.  (D.E. 20-1 at PageID 314.)  Additionally, the court found that Watson's retained counsel had failed to move for a new trial following his sentencing; that the July 15, 2009 motion for new trial was untimely; and that no motion for new trial was properly before the court.  (*Id.*)  Nonetheless, Petitioner had filed a direct appeal, which was then waived as part of a plea deal in another case.  (*Id.*)  Finally, the post-conviction court found that the post-conviction petition "was not timely filed pursuant to T.C.A. § 40-30-102" because "[t]he filing of an amended judgment on March 9, 2010, correcting a typographical error did not toll or extend the statute of limitations."  (*Id.*)

Watson appealed the post-conviction court's order denying relief to the TCCA, which held that the post-conviction petition had been filed untimely and, thus, did not warrant consideration on the merits.  *Watson*, 2011 WL 5841690, at *1.  The TCCA stated that

> [u]nder the Post-[C]onviction Procedure Act, a petition for post-conviction relief must be filed within one year of the date of the final action of the highest state appellate court to which an appeal is taken, or if no appeal is taken, within one year of the date on which the judgment became final. T.C.A. § 40–30–102(a). Unless one of the enumerated exceptions applies, a court does not have jurisdiction to consider an untimely petition. *See* T.C.A. § 40–30–102(b).

---

1 at PageID 262); Order on Pet. & Am. Pet. for Post-Conviction Relief, *id.* (Oct. 29, 2010) (D.E. 20-1 at PageID 310)). Petitioner claims to have not understood the danger inherent in self-representation and to have been incompetent to act as his own counsel. (Pet. for Post-Conviction Relief, *id.* (D.E. 20-1 at PageID 265-306)).

Tennessee Code Annotated section 40–30–102(b) lists the exceptions to the statute of limitations as situations where: (1) "[t]he claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required;" (2) "[t]he claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted;" or (3) "[t]he claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid."

\*\*\*

The petition for post-conviction relief was filed on June 15, 2010, more than one year after the judgment became final. Additionally, we determine that the post-conviction court also properly held that Petitioner failed to show that one of the exceptions to the one-year deadline listed in the statute was applicable.

However, in addition to the exceptions set out in the statute, the courts in this State have found that due process concerns can toll the statute of limitations in certain factual situations. *See Williams v. State,* 44 S.W.3d 464 (Tenn. 2001); *Sands v. State,* 903 S.W.2d 297 (Tenn. 1995); *Burford v. State,* 845 S.W.2d 204 (Tenn. 1992).

\*\*\*

In the case herein, we agree that retained trial counsel probably made missteps in his representation of Petitioner, namely, that he failed to file a timely motion for new trial. However, we determine that due process does not require the tolling of the statute of limitations. By Petitioner's own admission, as evidenced by the letter he wrote to the trial court prior to the expiration of the time in which he was required to file a motion for new trial, he was aware of counsel's failure to file the motion and asked for an extension of time. Petitioner then filed a pro se untimely motion for new trial and the trial court held a hearing on the motion and denied relief despite lacking jurisdiction.

Petitioner appealed the trial court's denial of the motion for new trial to this Court but later waived his right to appeal in conjunction with a guilty plea in a separate set of offenses. We note that a criminal defendant has the right to one level of appellate review. Tenn. R. App. P. 3(b); *Collins v. State,* 670 S.W.2d 219, 221 (Tenn. 1984). A defendant's waiver of this right to appeal must be made voluntarily. *See* Tenn. R. Crim. P. 37(d); *Collins,* 670 S.W.2d at 221. Further, the waiver should be reduced to writing in a document signed by the defendant, subscribed to by counsel, and clearly reflecting the defendant's awareness of the right to appeal and voluntarily waiving it. Tenn. R. Crim. P. 37(d). All of these steps were taken in the case herein.

When the waiver was executed, Petitioner had already filed his petition for post[-]conviction relief. However, the petition was filed more than one year from the date that the judgment became final. This Court has previously determined that mere lack of knowledge that a claim exists does not toll the statute of limitations. *See, e.g., Joshua Jacobs v. State,* No. M2009–02265–CCA–R3–PC, 2010 WL 3582493 (Tenn. Crim. App., at Nashville, Sept. 15, 2010) *perm. app. denied,* (Tenn. Jan. 20, 2011) (determining that petitioner's lack of knowledge due to attorney abandonment of the case and ignorance of legal requirements did not require tolling of the statute of limitations). Our supreme court has concluded that the one-year statute of limitations provides a defendant a reasonable opportunity to raise post-conviction claims in a reasonable time and manner. *See State v. Seals,* 23 S.W.3d at 279; *see also Carothers v. State,* 980 S.W.2d 215, 217–18 (Tenn. Crim. App. 1997). Accordingly, we determine that Petitioner has filed an untimely petition for post-conviction relief. The post-conviction court properly denied the petition.

*Watson,* No. 2011 WL 5841690, at *4-6 (footnote omitted).

### B. Procedural History of Petitioner's § 2254 Petition

On May 23, 2012, Watson filed the Petition in the United States District Court for the Eastern District of Tennessee. (D.E. 2.) The matter was transferred to this Court on June 5, 2012, (D.E. 4.), and on August 30, 2012, Petitioner filed an amended Petition. (D.E. 9.) On August 31, 2012, the Court ordered the WCF warden, currently Tammy Ford ("Respondent"), to file a reply. (D.E. 6.) On November 2, 2012, Respondent filed both an answer to the Petition and the state court record. (D.E. 19, 20.) Petitioner filed an amended complaint on November 9, 2012, (D.E. 22.), and on November 21, 2012, Watson filed a response to Respondent's Answer. (D.E. 24.)

On June 6, 2014, Watson moved for summary judgment, (D.E. 33.), which was opposed by Respondent. (D.E. 35.) The Court denied the motion on March 10, 2015. (D.E. 46.) On September 30, 2015, the Court directed Respondent to file a supplemental answer addressing the merits of the Petition, (D.E. 51.), which was filed on December 3 of the same year (D.E. 56.).

## II. PETITIONER'S FEDERAL HABEAS CLAIMS

### A. Legal Standard

Section 2254(b) states, in pertinent part:

(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Thus, a habeas petitioner must first exhaust available state remedies before requesting relief under § 2254. *E.g.*, *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987); *Rose v. Lundy*, 455 U.S. 509, 519 (1982); Rule 4, Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"). A petitioner has failed to exhaust his available state remedies if he has the opportunity to raise his claim by any available state procedure. 28 U.S.C. § 2254(c); *Preiser v. Rodriguez*, 411 U.S. 475, 477, 489-90 (1973).

To exhaust his state remedies, a petitioner must have presented the very issue on which he seeks relief from the federal courts to the courts of the state that he claims is wrongfully confining him. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). "'[T]he substance of a federal habeas

corpus claim must first be presented to the state courts.'" *Id.* at 163 (quoting *Picard*, 404 U.S. at 278). A habeas petitioner does not satisfy the exhaustion requirement of § 2254(b) "by presenting the state courts only with the facts necessary to state a claim for relief." *Id.*

Conversely, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id.* When a petitioner raises different factual issues under the same legal theory, he is required to present each factual claim to the highest state court in order to exhaust his state remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987). He has not exhausted his state remedies if he has merely presented a particular legal theory to the courts without presenting each factual claim. *Pillette*, 824 F.2d at 497-98. The claims must be presented to the state courts as a matter of federal law. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted); *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas

review.  *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (internal quotation marks and citation omitted).[6]  In general, however, "we may only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule."  *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

If a claim has never been presented to the state courts, but a state court remedy is no longer available (*e.g.*, when an applicable statute of limitations bars a claim), the claim is technically exhausted but procedurally barred.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *see also Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004) (the procedural default doctrine prevents circumvention of the exhaustion doctrine).[7]

Under either scenario, a petitioner must show cause to excuse his failure to present the claim and actual prejudice stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice.  *Schlup v. Delo*, 513 U.S. 298, 320-21 (1995); *Coleman*, 501 U.S. at 750.  The latter showing requires a petitioner to establish that a constitutional error has probably resulted in the conviction of a person who is

---

[6] The state-law ground may be a substantive rule dispositive of the case or a procedural barrier to adjudication of the claim on the merits.  *Walker*, 562 U.S. at 315.  A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed."  *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. at 60-61 (2009)).  "A discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."  *Id.* (quoting *Kindler*, 558 U.S. at 54.) (internal citations & quotation marks omitted).

[7] To avoid procedural default, federal law requires a federal habeas petitioner in Tennessee to present his federal claims to the TCCA.  *Covington v. Mills*, 110 F. App'x 663, 665 (6th Cir. 2004).

actually innocent of the crime. *Schlup*, 513 U.S. at 321; *see also House v. Bell*, 547 U.S. 518, 536-539 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

### B. Analysis of the Petitioner's Claims

Petitioner seeks relief pursuant to § 2254 based on the following six grounds:

> (1) that he was prejudiced by Attorney Howie's failure to file a timely motion for new trial, (D.E. 2 at PageID 10.);

> (2) that he was prejudiced by the trial court's refusal to "provide trial counsel" and allowing him to proceed *pro se* without conducting a competency evaluation, (*Id.* at PageID 11.);

> (3) that he was prejudiced by the lost transcript of the hearing where the trial court questioned him regarding his competence to proceed *pro se*, (*Id.* at PageID 13.);

> (4) that he was prejudiced by Attorney Anyanwu's "abandonment of his case," which resulted in the untimely filing of a motion for new trial, (*Id.* at PageID 15.);

> (5) that post-conviction counsel had a conflict due to counsel's representation of Attorney Howie in proceedings before the BPR (D.E. 22 at PageID 1154.); and

> (6) that Attorney Boxx withheld evidence that would have been favorable to Petitioner's alibi defense (*Id.*)

Warden Ford avers that Petitioner's claims are wholly barred because they have been procedurally defaulted and were not fairly presented to the TCCA. (D.E. 19 at PageID 187-88.) Respondent points out that Watson cannot now present any claims in the TCCA because he dismissed his direct appeal as part of a plea bargain. (*Id.*) Moreover, he was entitled to one post-

conviction petition under state law, Tenn. Code Ann. § 40-30-102(c), which the TCCA decided on an adequate and independent state ground—that of untimeliness. (D.E. 19 at PageID 188-89.)

The Court will initially consider Petitioner's fifth issue—that post-conviction counsel had a conflict of interest—which was raised for the first time in Watson's amended complaint. (D.E. 22 at PageID 1154.) He claims that post-conviction counsel had represented Howie and that counsel chose not to call Howie to testify at the post-conviction evidentiary hearing due to this conflict. However, Watson provides nothing more than conclusory allegations in support of his claim for relief. There is no evidence in the record that post-conviction counsel represented Howie. A petitioner carries the burden of proving the factual allegations underlying his claim for relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (denying claim of ineffective assistance of counsel supported by only a conclusory allegation). Accordingly, Watson is not entitled to relief on this claim.

Considering Watson's post-conviction petition and his claims of ineffective assistance of counsel and the loss of the transcript, the TCCA stated:

> On appeal, Petitioner insists that his petition for post-conviction relief is not barred by the statute of limitations because the trial court entered an amended judgment form on March 9, 2010, essentially extending the statute of limitations. Petitioner then filed his petition for post-conviction relief on June 15, 2010, "well within the [one-year] statute of limitations" set forth in Tennessee Code Annotated section 40–30–102. Petitioner also insists that he received ineffective assistance of counsel because his retained counsel failed to file a motion for new trial. Finally, Petitioner argues that he was prejudiced by the loss of the transcript of the record of the hearing during which he made the decision to represent himself at trial. . . .[8]

_____

[8] The Court notes that Petitioner also raised the issue of whether the "court erred in allowing defendant to waive his right to counsel without having his competency evaluated after court was notified that defendant had mental health problems." (Pet. for Post-Conviction Relief, *State v. Watson*, C05-437 (Cir. Ct. Dyer Cty. Jun. 15, 2010) (D.E. 20-1 at PageID 267)). It is clear from TCCA's opinion that the issue of self-representation was presented to the court and it

In the present case, the post-conviction court properly determined that the petition was filed more than one year after the date of the final action by the highest court to which an appeal was taken and thus well outside the statute of limitations. In the case herein, the judgment became final on May 24, 2009, thirty days after the judgment was entered on April 24, 2009. We note that the trial court's authority to amend the judgment order derived from Rule 36 of the Tennessee Rules of Criminal Procedure, as the improper date of sentencing, the improper date of trial, and the indication that Petitioner "pled guilty" were all merely clerical errors, and did not extend the statute of limitations as would a corrected judgment. *See Dennis J. Rountree v. State,* No. M2008–02527–CCA–R3–PC, 2009 WL 3163132, at *2 (Tenn. Crim. App., at Nashville, Oct. 2, 2009). The petition for post-conviction relief was filed on June 15, 2010, more than one year after the judgment became final. Additionally, we determine that the post-conviction court also properly held that Petitioner failed to show that one of the exceptions to the one-year deadline listed in the statute was applicable.

However, in addition to the exceptions set out in the statute, the courts in this State have found that due process concerns can toll the statute of limitations in certain factual situations. *See Williams v. State,* 44 S.W.3d 464 (Tenn. 2001); *Sands v. State,* 903 S.W.2d 297 (Tenn.1995); *Burford v. State,* 845 S.W.2d 204 (Tenn. 1992).

In *Williams v. State,* 44 S.W.3d 464 (Tenn. 2001), the most recent in a line of cases including *Burford v. State,* 845 S.W.2d 204 (Tenn. 1992) and *Sands v. State,* 903 S.W.2d 297 (Tenn. 1995), the Tennessee Supreme Court analyzed situation[s] where due process limitations toll the statute of limitations. In all three of these cases, our supreme court decided that the statute of limitations for post-conviction relief could be tolled in the factual situations presented. In *Burford,* the petitioner's sentence was enhanced by previous convictions that had subsequently been declared invalid, but not invalidated in time for him to meet the statute of limitations for filing his post-conviction petition. *Burford,* 845 S.W.2d at 208. Our supreme court stated that because the petitioner was in a procedural trap, the petitioner's due process rights would be violated by not allowing a tolling of the statute of limitations and the filing of a post-conviction petition. *Burford,* 845 S.W.2d at 208–09.

In *Sands,* our supreme court analyzed *Burford* and set out the basic rule derived from *Burford* and how to go about applying this rule in future cases. The supreme court stated:

> [I]t will be helpful to summarize the basic rule to be derived from *Burford:* that, in certain circumstances, due process

concluded that the untimely petition barred review of the issue.

> prohibits the strict application of the post-conviction statute of
> limitations to bar a petitioner's claim when the grounds for relief,
> whether legal or factual, arise after the "final action of the highest
> state appellate court to which an appeal is taken"-or, in other
> words, when the grounds arise after the point at which the
> limitations period would normally have begun to run. In applying
> the *Burford* rule to specific factual situations, courts should utilize
> a three-step process: (1) determine when the limitations period
> would normally have begun to run; (2) determine whether grounds
> for relief actually arose after the limitations period would normally
> have commenced; and (3) if the grounds are "later-arising,"
> determine if, under the facts of the case, a strict application of the
> limitations period would effectively deny the petitioner a
> reasonable opportunity to present the claim. In making this final
> determination, courts should carefully weigh the petitioner's
> liberty interest in "collaterally attacking constitutional violations
> occurring during the convictions process," *Burford,* 845 S.W.2d at
> 207, against the State's interest in preventing the litigation of "stale
> and fraudulent claims." *Id.* at 208.

*Sands,* 903 S.W.2d at 301 (footnote omitted). However, after going through this
analysis, the supreme court concluded that the statute of limitations had not been
tolled in the Sands situation.

> In *Williams v. State,* 44 S.W.3d 464 (Tenn. 2001), the supreme court again
> held that the statute of limitations was tolled by the factual and legal situation of
> the petitioner. In *Williams,* there was some dispute over whether the petitioner's
> trial counsel continued to represent him and how much the petitioner actually
> knew about the progress of his appeals. The supreme court stated that the question
> was whether the petitioner had been "misled to believe that [his trial] counsel was
> continuing the appeals process...." *Id.* at 471. The supreme court remanded the
> case to the trial court for it to determine whether the statute must be tolled due to
> possible attorney misrepresentation. *Id.* In other words, *Williams* "appears to
> limit claims of attorney misrepresentation tolling the statute of limitations to times
> when counsel has made misrepresentations directly related to filing a defendant's
> appeal." *Crawford v. State,* 151 S.W.3d 179, 184 (Tenn. Crim. App. 2004).

*Watson,* 2011 WL 5841690, at *4-5 (footnote added). The TCCA ultimately concluded that the

petition was untimely and that the circumstances of the case did not warrant tolling the statute of

limitations. (*Id.*)

If a state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred by procedural default from seeking federal habeas review. *See supra* p. 11-14. The Sixth Circuit applies a four-part test to determine whether a habeas claim has been procedurally defaulted due to a petitioner's failure to comply with a state procedural rule:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . .
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1985) (citations & footnote omitted); *see also Van Hook v. Bobby*, 661 F.3d 264, 269 (6th Cir. 2011), *cert. denied sub. nom. Van Hook v. Robinson*, 132 S. Ct. 1917 (2012); *Clinkscale v. Carter*, 375 F.3d 430, 440–41 (6th Cir. 2004).

In declining to address the merits of the post-conviction petition because it was untimely, the TCCA unambiguously relied on Tennessee Code Annotated section 40–30–102. *Watson*, 2011 WL 5841690, at *4; *see also Peoples*, 734 F.3d at 512 (requiring that courts "only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule"). Tennessee Code Annotated section 40-30-102 states:

18

(a) Except as provided in subsections (b) and (c), a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

(b) No court shall have jurisdiction to consider a petition filed after the expiration of the limitations period unless:

(1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial;

(2) The claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

(3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the petition must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid.

(c) This part contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment. If a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed. A petitioner may move to reopen a post-conviction proceeding that has been concluded, under the limited circumstances set out in § 40-30-117.

Tenn. Code Ann. § 40-30-102. Thus, Tennessee has a statute that requires petitioners to request

post-conviction relief within one year of the entry of the final judgment if no appeal is to be taken. Petitioner failed to comply with that statute as judgment was entered on April 24, 2009, became final thirty days later, on May 24, 2009, and he did not file his petition until June 15, 2010—well after the one-year mark. Therefore, the first *Maupin* factor has been satisfied. The second factor also has been satisfied, as the TCCA enforced the timeliness requirement bar. *Watson,* 2011 WL 5841690, at *4.

The third requirement, that the state procedural rule must be an "adequate and independent" state ground, focuses on "the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Maupin*, 785 F.2d at 138; *see also Henry v. Mississippi*, 379 U.S. 443, 447–48 (1965) ("[A] litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest. In every case we must inquire whether the enforcement of a procedural forfeiture serves such a state interest. If it does not, the state procedural rule ought not be permitted to bar vindication of important federal rights."). The adequacy of a state procedural rule "is itself a federal question." *Lee v. Kemna*, 534 U.S. 362, 375 (2002). "Ordinarily, violation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim." *Id.* at 376 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984). The Supreme Court has held a procedural ground to be inadequate in "exceptional cases," such as where the application of a "generally sound rule" has been deemed "exorbitant." *Id.*; *see also Walker v. Martin*, 562 U.S. 307, 309 (2011) (a state procedural rule may be inadequate when a state court "exercised its discretion in a surprising or unfair manner").

A review of Tennessee cases demonstrates that the Tennessee statute relied upon by the TCCA in this case is strictly enforced. *See, e.g.*, *Stewart v. State*, 95 S.W.3d 229 (Tenn. Crim. App. 2002); *Carothers v. State*, 980 S.W.2d 215 (Tenn. Crim. App. 1997); *Passarella v. State*, 891 S.W.2d 619 (Tenn. Crim. App. 1994). The Tennessee Supreme Court has recognized that the one-year statute of limitations provides petitioners with a reasonable opportunity to pursue their post-conviction claims, while at the same time striking a balance with the state's interest in "preventing the litigation of stale or fraudulent claims." *Carothers*, 980 S.W.2d at 217; *see also Hannah v. Conley*, 49 F.3d 1193, 1196-97 (6th Cir. 1995) (concluding that Tennessee's post-conviction statute of limitations was mandatory, regularly applied, and served to bar presentation of unexhausted claims). Thus, the third and final *Maupin* factor has been satisfied.

Because Watson's claims were decided on an independent and adequate state ground, he must show cause for the default and prejudice resulting from the alleged violation of federal law. *See Maupin*, 785 F.2d at 138. Petitioner avers that the cause of his procedural default in state court was Attorney Kelly's failure to argue that his petition was timely because the date his direct appeal was voluntarily dismissed, July 22, 2010, met the statutory definition of the final action of the highest court to which an appeal was taken.[9] (D.E. 24 at PageID 1160.) He contends that the post-conviction court therefore erred when it ruled his petition was untimely and that "his post-conviction attorney . . . was ineffective for failing to raise this issue on post-conviction direct appeal . . . ." (*Id.*) Petitioner acknowledges that using the July 22 date would

---

[9] Tennessee Code Annotated section 40-30-102 provides two scenarios for determining when the statute of limitations for a post-conviction action begins to run: the date the judgment became final (when no appeal is taken), or the date of "the final action of the highest appellate court to which an appeal is taken." Petitioner cites no authority in support of his argument that the date a voluntary dismissal is entered qualifies under the latter provision.

mean that his June 15 petition was filed prematurely; nonetheless, he contends that the petition would have been summarily dismissed and that he could have then re-filed a timely petition.[10]

In 1991, the United States Supreme Court held that absent a right to counsel in a collateral proceeding, an attorney's errors in that proceeding do not establish cause for a procedural default. *Coleman*, 501 U.S. at 752 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). Until 2012, *Coleman* served as a complete bar to a federal habeas petitioner's attempt to prove cause with a claim of ineffective assistance of post-conviction counsel. However, the Supreme Court adopted a limited exception to this blanket bar in *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012). In that case, the Court held that "[i]nadequate assistance of counsel at *initial-review collateral proceedings* may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* (Emphasis added). The Court defined initial-review collateral proceedings as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 1315. Although a major change in the law, the Court was explicit that the exception carved out was narrow: "The holding in this case does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings* . . . ." *Id.* at 1320 (emphasis added).[11] Because Watson has not alleged

---

[10] Although a petitioner may only file one petition for post-conviction relief in Tennessee, *see* Tenn. Code Ann. § 40-30-102(c), courts have interpreted this limitation as applying only to cases where a previous petition was decided *on the merits*. *See Gibson v. State*, 7 S.W.3d 47, 50 (Tenn. Crim. App. 1998). Thus, a successive timely petition that otherwise complies with the requirements of the Post-Conviction Procedure Act will not be barred because a prior petition was filed prematurely and summarily dismissed.

[11] The Supreme Court later extended the application of *Martinez* to states with a procedural framework that "in theory" allows a claim of ineffective assistance of counsel on direct appeal but "as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so . . . ." *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911, 1921 (2013); *see also*

that post-conviction counsel was ineffective during the course of his initial-review collateral proceeding, the *Martinez* exception is not applicable. *See also Atkins v. Holloway*, 792 F.3d 654, 662 (6th Cir. 2015) (pointing out the multiple instances where the *Martinez* Court stressed that its holding was limited to initial-review collateral proceedings).[12] Watson has not alleged any other cause that would excuse his procedural default; therefore, he is not entitled to federal habeas relief.

## C. Conclusion

Because claim 5 was not supported by evidence and the remaining issues raised by Watson are barred by the doctrine of procedural default, the petition is DISMISSED with prejudice. Judgment shall be entered for Respondent.

## III. MOTIONS

Petitioner's motion to file a supplemental answer to the Respondent (D.E. 59.) and motion for leave to file a supplemental affidavit (D.E. 62.) are hereby GRANTED. The Court considered these filings in reaching its decision. Accordingly, Watson's motion for extension of time to file a reply to Respondent's response (D.E. 58.) is DENIED as moot. Moreover, as the Court has found it to be without merit, the pending motions for instanter ruling on habeas corpus

---

*Wallace v. Sexton*, 570 F. App'x 443, 454 (6th Cir. 2014) (noting that the *Martinez-Travino* framework applied in Tennessee).

[12] There are also important factual distinctions between *Martinez* and the instant case. In *Martinez*, the procedural default was caused by post-conviction counsel's failure to raise claims of ineffective assistance of trial counsel in the initial-review collateral proceeding, leading to procedural default of those claims in his federal habeas case. 132 S. Ct. 1314-15. Here, the procedural default was caused by Watson's failure to file a timely petition for post-conviction relief. Attorney Kelly was not appointed until *after* the untimely petition was filed; the initial petition was filed *pro se*. Therefore, Petitioner's attempt to show cause for the untimeliness by asserting ineffective assistance of post-conviction counsel is inapt.

petition (D.E. 50.), in opposition to Respondent's request for extension to file response (D.E. 55.), for default judgment (D.E. 57.), and to ascertain the status of Petitioner's habeas corpus petition (D.E. 63.) are all DISMISSED as moot.

## IV. APPEAL ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. at 335; *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when a petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks and citations omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts, however, should not issue a COA as a matter of course. *Bradley*, 156 F. App'x at 773.

In this case, there can be no question that the § 2254 Petition is meritless for the reasons previously stated. Because any appeal by Petitioner on the issues raised in his § 2254 Petition does not deserve attention, the Court DENIES a certificate of appealability.

Federal Rule of Appellate Procedure 24(a)(1) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5). In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.[13]


**IT IS SO ORDERED** this 12th day of September 2016.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[13] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this order. *See* Fed. R. App. P. 24(a)(5).